**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
MARY McALPIN and DAVID McALPIN
CO-EXECUTORS, on behalf of the
ESTATE OF DANIEL McALPIN
and on their own behalves,                                    **COMPLAINT**

                Plaintiffs,
vs.                                                            **JURY TRIAL DEMANDED**

JASON T. WURTZ,                                                1:23-cv-1068 (GTS/DJS)

                Defendant.
-----------------------------------------------------------------x

By and through their counsel, Michael H. Sussman, Esq. and Emery Celli Brinckerhoff Abady Ward & Maazel LLP, Plaintiffs state as and for their Complaint against defendant Jason T. Wurtz:

**PRELIMINARY STATEMENT**

1. Daniel McAlpin was shot to death in his home by Defendant New York State Trooper Jason T. Wurtz. Mr. McAlpin had not committed any crime nor harmed anyone. He had no criminal history. He was in the midst of a mental health episode, and he needed care. Wurtz was not there to provide it. Instead, Wurtz stormed into Mr. McAlpin's home with at least five other law enforcement officers. They were heavily armed and wearing bullet-proof vests; one wielded an AR-15 rifle. Mr. McAlpin was upstairs in his house, pleading for the officers to leave him alone. They would not abide. They ordered him to come downstairs; they pointed guns and tasers at him; they shone flashlights in his face; and they screamed at him. As he came down the stairs, Wurtz shot Mr. McAlpin, and then when Mr. McAlpin fell to the ground, Wurtz shot him

1

three more times, killing him. Now, a man who was loved by many, and who threatened no one, is senselessly dead.

2.     Mr. McAlpin's grieving parents, who have been appointed Executors of his Estate, now bring this action under the Fourth Amendment to the United States Constitution and state law to hold Wurtz accountable for this needless and easily avoidable homicide.

**PARTIES**

3.     Plaintiff, Mary McAlpin, is Daniel McAlpin's mother and the Co-Executor of the Estate of Daniel McAlpin, of legal age and a resident of the County of Ulster, State of New York, within this federal judicial district.

4.     Plaintiff, David McAlpin, is Daniel McAlpin's father and the Co-Executor of the Estate of Daniel McAlpin, of legal age and a resident of the County of Ulster, State of New York, within this federal judicial district.

5.     At all times relevant hereto, including September 9, 2022, Defendant Jason T. Wurtz has been a member of the New York State Police. As set forth herein, he acted under color of state law in killing Plaintiffs' son.

**JURISDICTION AND VENUE**

6.     As Plaintiffs allege Defendant violated Daniel McAlpin's rights as guaranteed by the Fourth Amendment to the United States Constitution within this federal judicial district, this Honorable Court has jurisdiction and may exercise venue over this matter, including pendent claims, pursuant to 28 U.S.C. sections 1331, 1343(a) (3) & (4), 1367(a) and 1391(b), and 42 U.S.C. sections 1983 and 1988.

**FACTUAL ALLEGATIONS**

7. On September 9, 2022, Defendant Wurtz shot Daniel McAlpin to death.

8. At the time, Defendant Wurtz was on the first floor of the McAlpins' home in Ulster County with at least five other members of law enforcement; he was the only one to discharge his firearm.

9. Before being killed, Daniel McAlpin, who was forty-one years of age, college-educated, employed and highly intelligent, was by himself on the second floor of the home he lived in with his parents.

10. While on the second floor of his home, Mr. McAlpin posed no threat of imminent harm to any third party or to himself.

11. Earlier on September 9, Mr. McAlpin had spoken with another state trooper who, satisfied that Mr. McAlpin posed no threat to himself or others, left him at his home.

12. Between the time this state trooper departed from the McAlpin home and the time Defendant killed him, Daniel McAlpin did not threaten any third party or himself.

13. Along with at least five other members of law enforcement, Defendant Wurtz entered the McAlpin home in the early evening hours of September 9, 2022.

14. They determined Mr. McAlpin was on the second floor of the home and began conversing with him.

15. Mr. McAlpin stated that he "did not want to hurt anyone" and wanted law enforcement who had gathered on the first floor "to please go away."

16. Rather than desist from further engagement with Mr. McAlpin after confirming that he was unharmed and did not want to have any contact with them, Defendant Wurtz and the other members of law enforcement ignored Mr. McAlpin's pleading for them to go away and proceeded to open the door to the stairway to the second floor in a coordinated operation.

17. Immediately before opening the door and poised with lethal force at the bottom of the stairs, someone yelled, "We don't want to hurt you. We want to build trust with you."

18. Daniel responded, "I don't want to build trust" and again expressed his desire to be left alone as two officers opened the door to the stairway.

19. When they opened this door to a staircase, the officers could see that Daniel was at the top of the stairs, not approaching them.

20. Upon opening the door, members of law enforcement, including the defendant, could also see that Mr. McAlpin had an orange tipped "weapon" which posed no threat to them, and was also holding a knife.

21. The McAlpins owned no guns and Mr. McAlpin never had a gun on September 9, 2022.

22. Upon information and belief, Defendant Wurtz knew Mr. McAlpin did not have a gun and knew the McAlpins did not own any guns.

23. At the time, Defendant Wurtz was armed with lethal weaponry and prepared to use the same against Mr. McAlpin.

24. Upon opening the door, members of law enforcement began screaming commands at Mr. McAlpin, demanding that he let them see his hands and drop the knife.

25. Mr. McAlpin had no intent to confront the police officers and had made that perfectly clear.

26. 22. However, before he could respond to their rapidly fired commands, New York State Trooper Elias Strickland tased Mr. McAlpin, causing his hands and body to shake as he descended the stairs.

27. As he descended, McAlpin made no effort to strike any police officer with the knife he held in his trembling hand.

28. As he was descending the stairs, Mr. McAlpin posed no immediate threat to anyone's life.

29. As Mr. McAlpin reached the bottom of the stairs, Defendant Wurtz discharged two shots, causing McAlpin to fall onto the floor on his stomach.

30. Other police officers were proximate to the decedent and could have immediately responded and cuffed him.

31. However, while Mr. McAlpin was on the ground and posing no imminent threat to anyone, Defendant Wurtz fired three more shots, each of which struck decedent.

32. Two of these bullets, shot after Mr. McAlpin was already helpless and, on the ground, caused Mr. McAlpin's death.

33. In total, Defendant Wurtz shot five times and struck Mr. McAlpin with four bullets.

34. The medical examiner retrieved the bullet that struck Mr. McAlpin's right shoulder; it had penetrated the decedent's right forearm, perforated muscles and soft tissues while traveling from right to left and upward.

35. Another gunshot, fired from left to right and *downward,* while Mr. McAlpin was already on the floor at the bottom of the stairway, penetrated the decedent's superior medial left chest, causing lethal injuries to Mr. McAlpin's heart and inferior venae cavae.

36. A third gunshot, fired right to left and also *downward,* while Mr. McAlpin was already on the floor at the bottom of the stairway, perforated Mr. McAlpin's lungs, liver, large intestines, and stomach, causing lethal injuries.

37. A fourth gunshot penetrated Mr. McAlpin's left shoulder, perforating muscle, and soft tissues, and was retrieved in the decedent's left arm. This bullet moved from left to right and *downward.*

38. Four days after Defendant Wurtz killed Mr. McAlpin, the Ulster County Medical Examiner determined the cause of death: "penetrating gunshot wounds to the trunk," and declared Mr. McAlpin's death a "homicide."

39. After killing the decedent, Defendant Wurtz yelled "he's down, we got him, everybody's safe."

40. An EMT can then be heard in the background yelling, "he's my patient," at which point others can be heard screaming to "get him out."

41. The decedent had a deep and loving relationship with his parents, lived with them, and contributed to the household he shared with them.

42. The decedent had a college education, had worked as a machinist and, at the time of his death, worked at a popular restaurant in Ellenville.

43. The decedent had no criminal history and had received in-patient treatment three years before for severe anxiety; his mental health condition was known to Defendant and the other police officers who responded to his parents' home for the last time on September 9, 2022.

44. Defendant's action as set forth above caused decedent fright, apprehension, conscious pain and suffering, and death.

**AS AND FOR A FIRST CAUSE OF ACTION – 42 U.S.C sec. 1983**

45. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

46. By reason of the foregoing, and by shooting, and using gratuitous, excessive, and unconscionable force against Mr. McAlpin, resulting in his death, Defendant deprived Mr. McAlpin of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

47. Defendant acted under pretense and color of state law and within the scope of his employment as a New York State Trooper. Defendant acted willfully, knowingly, and with the specific intent to deprive Mr. McAlpin of his

constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

48. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A SECOND CAUSE OF ACTION – WRONGFUL DEATH

49. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

50. By reason of the foregoing, the statutory distributees of Mr. McAlpin's estate sustained pecuniary and non-economic loss resulting from the loss of love, comfort, companionship, society, attention, services, income, and support of Mr. McAlpin. Defendant is liable to Plaintiffs for the wrongful death of Mr. McAlpin.

51. As a consequence, Plaintiffs have suffered damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION

52. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

53. By dint of the wrongful actions of the defendant, plaintiffs have been deprived of financial support, love, companionship, and association with their son.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Honorable Court accept jurisdiction of this matter; empanel a jury to hear and decide all matters within

its scope and authority; award to Plaintiffs as Co-Administrators of the Estate of Daniel McAlpin compensatory damages for his wrongful death; award to Plaintiffs as the distributees of the Estate and against Defendant compensatory damages for the pecuniary injuries, including the loss of support, services, voluntary assistance medical and funeral expenses, and an award for conscious pain and suffering experienced by the decedent; award to Plaintiffs as Co-Administrators of this Estate and against Defendant compensatory damages for the loss of income caused Daniel McAlpin by his wrongful death; award to Plaintiffs compensatory damages for the loss of familial association and the associated pain and suffering caused them as next of kin by and through decedent's wrongful death; award to Plaintiffs and against Defendant punitive damages arising from the brazen and unconscionable violation of constitutional rights inflicted upon the decedent, parents, and next of kin as well as compensatory damages for the conscious pain and suffering caused to the decedent; award Plaintiffs the attorneys' fees and costs incurred in the prosecution of this case; and for any further relief which law and equity require.

Respectfully submitted,

_____
MICHAEL H. SUSSMAN [103324]
SUSSMAN & GOLDMAN
PO BOX 1005
GOSHEN, NY 10924
(845)-294-3991

SAMUEL SHAPIRO
EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL, LLP

9

600 5th Ave 10th Floor
New York, NY 10020
(212)-763-5000